FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
1/31/2022 5:10 PM
KATHLEEN VIGIL CLERK OF THE COURT
Marina Sisneros

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

ELIEZER FALCON AND
ANDREA SNEED,

      Plaintiff,

Case assigned to Sanchez-Gagne, Maria

v.                                     NO. D-101-CV-2022-00160

KLLM TRANSPORT SERVICES, LLC AND
AHMAD MOBLEY,

      Defendants.

## PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES

COMES NOW Plaintiffs Eliezer Falcon and Andrea Sneed ("Plaintiffs"), by and through their attorneys, Zinda Law Group, PLLC (S. Burgess Williams), and make the following allegations against Defendants:

### I.   PARTIES, JURISDICTION, & VENUE

1. Plaintiff Eliezer Falcon ("Plaintiff Falcon") is an individual and is now, and at all time mentioned in this Complaint was, residing at 4715 North Black Canyon Highway, Apt. 2124, Phoenix, Arizona 85015.

2. Plaintiff Andrea Sneed ("Plaintiff Sneed") is an individual and is now, and at all time mentioned in this Complaint was, residing at 4715 North Black Canyon Highway, Apt. 2124, Phoenix, Arizona 85015.

3. Defendant KLLM Transport Services, LLC ("Defendant KLLM") is a corporation formed under the laws of Texas. Defendant KLLM can be served through its registered agent, CT Corporation System, at 206 S. Coronado Avenue, Espanola, New Mexico 87532.



EXHIBIT A

4. Defendant Ahmad Mobley ("Defendant Mobley") is an individual who, upon information and belief, is a resident of Florida. Defendant Mobley may be served at his residence, located at 14221 SW 48th Court Road, Ocala, Florida 34473, or wherever he may be found.

5. Plaintiffs' claims arise under the common law and statutory laws of New Mexico. The Court, therefore, has subject matter jurisdiction. *See* Art. VI, § 13, New Mexico Constitution.

6. Venue is proper in Santa Fe County pursuant to NMSA § 38-3-1 because Defendants are not residents of this state.

7. Plaintiffs seek damages in excess of the minimum jurisdictional limits of the Court.

## II.   FACTUAL BACKGROUND

8. On or about May 13, 2021, Plaintiffs were traveling westbound near mile marker 70 on Interstate 40 in Cibolo County, New Mexico in a 2007 Saab SUV.

9. Plaintiffs were traveling in a reasonable and prudent manner and were exercising ordinary care for their safety all times relevant herein.

10. At the same time, Defendant Mobley was driving a 2019 Freightliner, towing a trailer, both of which were owned by and operated at the direction of Defendant KLLM.

11. Plaintiffs were behind Defendant Mobley.

12. Plaintiffs changed lanes into the left-hand lane in order to pass Defendant Mobley's tractor-trailer.

13. As Plaintiffs were passing Defendant Mobley, Defendant Mobley began entering Plaintiffs' lane.

14. Plaintiffs moved further left to avoid a collision with Defendant Mobley, but lost control of their vehicle and the van Plaintiffs were towing.

15. Plaintiffs' vehicle then collided with another vehicle.

16. Plaintiffs' vehicle and the vehicle it was towing then collided with the mile post.

17. As a direct and proximate result of Defendant Mobley's actions and the resulting collisions, Plaintiffs suffered personal injuries and resulting damages in an amount to be determined at trial.

### III. CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**(Negligence of Defendant Mobley)**

19. Plaintiffs incorporate herein by reference the allegations described above.

20. At all times relevant herein, Defendant Mobley was operating a commercial motor vehicle.

21. In order to undertake such actions, Defendant Mobley is required to have, at a minimum, the knowledge and skills necessary for the safe operation of the commercial motor vehicle.

22. The safe operation of commercial motor vehicles requires specialized knowledge, skill, and additional training not necessary for the safe operation of passenger vehicles because:

   a. commercial motor vehicles are heavier than passenger vehicles and take longer to stop, as compared to a passenger car operating at the same pre-braking speed;

   b. commercial motor vehicles are heavier than passenger vehicles and cause more significant property damage and/or personal injury or death in collisions, as compared to passenger cars operating at the same pre-collision speed and trajectory;

   c. commercial motor vehicles are heavier than passenger vehicles and cause more significant property damage and/or personal injury or death in collisions, as

    compared to passenger cars operating at the same pre-collision speed and trajectory; and

  d. commercial motor vehicles pose more of a risk of causing injury, death, or property damage in a collision, as compared to a collision involving a passenger vehicle operating at the same pre-collision speed and trajectory.

 23. In order to undertake the safe operation of a commercial motor vehicle, drivers such as Defendant Mobley must have knowledge and skills in many areas, including the following:

  a. the procedures for safe vehicle operation;

  b. the proper procedures for performing basic maneuvers such as changing lanes and space management;

  c. the importance driving without distractions; and

  d. the importance of understanding the effects of speed, including speed and visibility and speed and traffic flow.

 24. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the well-known danger of refusing to observe traffic conditions and merging or changing lanes without first ensuring that the merge or lane change can be made safely.

 25. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand that it is reasonably foreseeable that refusing to observe the condition of traffic and merging or changing lanes without first ensuring that the merge or lane change can be made safely, could cause a collision and harms and losses.

 26. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the foreseeable dangers of refusing

to observe traffic conditions and merging or changing lanes without first ensuring that the merge or lane change can be made safely.

27. Defendant Mobley owed duties of ordinary care to Plaintiffs and other motorists on the roadway at all times relevant herein. Defendant Mobley's careless, negligent, and unlawful acts directly and proximately caused the harms and losses Plaintiffs incurred in one or more of the following particulars:

    a. maintaining an unsafe distance from other cars;

    b. keeping an improper lookout;

    c. traveling at an unreasonable speed given the circumstances;

    d. making an untimely and improper application of his brakes;

    e. exhibiting inadequate driver attention;

    f. driving distracted;

    g. taking improper evasive actions to avoid the collision;

    h. refusing to observe traffic conditions;

    i. improperly communicating his presence;

    j. refusing to properly manage space around his tractor-trailer; and

    k. choosing to violate safety rules.

28. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiffs suffered personal injuries and resulting damages in an amount to be determined at trial.

29. Defendant Mobley's careless and negligent were the direct and proximate cause of the collision and Plaintiffs' resulting harms and losses.

## THIRD CLAIM FOR RELIEF
(*Respondeat Superior*)

30. Plaintiffs incorporate herein by reference the allegations described above.

31. Without waiving the foregoing, in conjunction with, additionally and/or alternatively, Plaintiffs would further show this Court that Defendant Mobley was in the course and scope of his employment with Defendant KLLM at the time of this collision.

32. Under the doctrine of *Respondeat Superior*, Defendant KLLM is responsible for Plaintiffs' damages that Defendant Mobley's negligence caused as alleged above.

## FOURTH CLAIM FOR RELIEF
(Negligence of Defendant KLLM)

33. Plaintiffs incorporate herein by reference the allegations described above.

34. At all times relevant herein, Defendant KLLM operated as a commercial motor carrier.

35. In return for the privilege to operate commercial motor vehicles on public roadways, prospective motor carriers must make certain safety related certifications and verifications.

36. Motor carriers such as Defendant KLLM are required to submit a Form MCS-150 to the Federal Motor Carrier Safety Administration ("FMCSA") and obtain a United States Department of Transportation ("USDOT") number.

37. Each Form MCS-150 Defendant KLLM submitted or will submit contains a Certification Statement whereby Defendant KLLM declares under the penalty of perjury that it is familiar with the Federal Motor Carrier Safety Regulations ("FMCSR") and/or Federal Hazardous Materials Regulations.

38. Motor carriers such as Defendant KLLM are required to submit a Form OP-l to the Federal Motor Carrier Administration in order to receive interstate operating authority.

39. The Form OP-l Defendant KLLM submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that Defendant KLLM is subject to the pertinent portions of the US DOT's Federal Motor Carrier Safety Regulations ("FMCSR") at 49 CFR, Chapter 3, Subchapter B (Parts 350-399).

40. The Form OP-l Defendant KLLM submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that it has access to, and is familiar with, all applicable US DOT regulations relating to the safe operation of commercial vehicles and that they will comply with the regulations.

41. Each Form OP-l Defendant KLLM submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, it:

   a. has in place a system and an individual responsible for ensuring overall compliance with the FMCSR;

   b. can produce a copy of the FMCSR;

   c. has in place a driver safety training/orientation program;

   d. is familiar with US DOT regulations governing driver qualifications and have in place a system for overseeing driver qualification requirements (49 CFR Parts 391); and

   e. has in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles.

42. Reasonably safe motor carriers develop and implement policies, practices, and procedures to give effect to the minimum safety standards contained in the FMCSR.

43. Reasonably safe motor carriers train and educate their drivers regarding the safe operation of commercial motor vehicles.

44. Reasonably safe motor carriers utilize information and training materials from industry associations and third-party safety vendors such as J.J. Keller & Associates, Inc., the "Smith System," or the National Safety Council to train and educate their drivers regarding the safe operation of commercial motor vehicles.

45. The safe operation of commercial motor vehicles includes practices and procedures related to space management and observing the condition of traffic before changing lanes to ensure that the lane change can be made safely.

46. Reasonably safe motor carriers utilize publicly available government, industry, and trade publications regarding the preventability of highway collisions to design, develop, and implement safety management controls, which are designed to reduce collisions involving commercial motor vehicles.

47. Reasonably safe motor carriers never allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

48. Defendant KLLM's careless, negligent, willful, wanton, reckless, and unlawful acts directly and proximately caused Plaintiffs' harms and losses in one or more of the following particulars by refusing to use reasonable care by:

 a. refusing to design, develop, and implement adequate safety management controls related to changing lanes when unsafe;

 b. refusing to train Defendant Mobley in the well-known dangers of refusing to observe traffic conditions and changing lanes when unsafe;

c. refusing to properly monitor and supervise the driving habits of its drivers, employees, and/or agents, specifically Defendant Mobley;

d. refusing to properly instruct its drivers, employees, and/or agents, specifically Defendant Mobley;

e. refusing to comply with federal and/or state regulations and industry standards, as referenced in this Complaint and as developed during the discovery in this case;

f. improperly auditing the logs and supporting documentation of its drivers, employees, and/or agents, specifically Defendant Mobley;

g. refusing to utilize available information to properly monitor its drivers, employees, and/or agents, specifically Defendant Mobley for compliance with company polices and/or state and federal regulations;

h. allowing Defendant Mobley to operate a commercial motor vehicle despite having knowledge of his inability to do so safely;

i. refusing to implement adequate safety management controls to ensure compliance with the required safety fitness standard;

j. refusing to utilize available technology to monitor and audit the safety performance of its drivers, including Defendant Mobley; and

k. negligently hiring, training, and supervising Defendant Mobley.

49. Defendant KLLM's careless and negligent were the direct and proximate cause of the collision and Plaintiffs' resulting harms and losses.

### IV. DAMAGES

50. Plaintiffs incorporate herein by reference the allegations described above.

51.     As a result of the acts and/or omissions of these Defendants, Plaintiffs suffered injuries and damages. Plaintiffs are entitled to damages, both past and future, including, but not limited to, medical costs, lost wages, loss of earning capacity, pain and suffering, mental anguish, physical impairment, and any other damages that will be proved at trial.

52.     Plaintiffs plead for all other damages, pecuniary or otherwise, arising out of law or equity, that they may be justly and equitably entitled to, in the wisdom of the Court.

## V.     PRAYER & REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

a. for special and actual damages in an amount to be proved at trial and as allowed by law;

b. for punitive damages in an amount to be proved at trial and as allowed by law;

c. for pre-judgment and post-judgment interest as allowed by law;

d. for costs of court; and

e. for such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

*/s/ S. Burgess Williams*
S. Burgess Williams
**ZINDA LAW GROUP**
8843 North Capital of Texas Highway
Suite 304
Austin, Texas 78759
(512) 246-2224 Office
(512) 580-4252 FAX
burgess@zdfirm.com
**Service of Documents: service@hzfirm.com**

*Attorneys for Plaintiff*